UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20305-CR-BLOOM/TORRES

UNITED STATES OF AMERICA,

v.

CARLOS ALBERTO QUINCHIA-CARMONA,

    *Defendant.*

_____/

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTIONS TO AMEND AND REDUCE SENTENCE

This cause comes before the Court upon Defendant Carlos Alberto Quinchia Carmona's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582. [D.E. 118]. The Government filed a Response in Opposition [D.E. 121], to which Defendant replied. [D.E. 122]. The matter is thus ripe for adjudication. The Court has reviewed the Motion, the Opposition, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion should be GRANTED.[1]

---

[1] On February 6, 2024, the Honorable Beth Bloom referred Defendant's Motion to the undersigned Magistrate Judge for disposition. [D.E. 124].

1

## I.     BACKGROUND

In February 2017, a group of drug traffickers in South Florida led by Lazaro Gil began to make plans to acquire a shipment of cocaine from South America which would be loaded onto a fishing boat and transported to Miami, Florida. Gil acquired the fishing boat *Alma Mater*, which he turned over to boat captain Jorge Castella to renovate and make suitable for transporting multi-hundred kilogram loads of cocaine. Castella fabricated a secret compartment in the boat capable of holding up to 650 kilograms of cocaine.

In 2018, Castella sailed the *Alma Mater* to Grenada, where he awaited instructions for receiving the cocaine shipment. Gil traveled to the Dominican Republic where he met Cristian Cabrera. Gil and Cabrera agreed to bring the *Alma Mater* cocaine shipment to Puerto Rico, where Cabrera had a distribution network. Cabrera told Gil he could sell the cocaine in Puerto Rico for $25,000 per kilogram.

Castella took the *Alma Mater* from Grenada to offshore waters, where he met a boat from South America and received 580 kilograms of cocaine, which Castella stashed in the secret compartment aboard *Alma Mater*. After being told to take the load to Puerto Rico, Castella ran the boat to a marina in St. Martin, then flew to Puerto Rico to see the location where he was to deliver the cocaine.

After arriving in Puerto Rico, Castella met with Gil, Defendant Quinchia-Carmona, and Columna Severino, who took Castella to a waterfront house that had been rented for the offload of the cocaine. Castella then ran the *Alma Mater* from St.

Martin to Puerto Rico and docked at the waterfront house, where the boat was met by Quinchia-Carmona and others. They then offloaded the cocaine.

Before the cocaine was imported aboard the *Alma Mater*, Gil brought Defendant Quinchia-Carmona to the waterfront home, where he and others repaired the dock and prepared the house for the arrival of the boat. The following day, Quinchia-Carmona was taken to a second, nearby house, which they prepared for the arrival of the cocaine. When the boat arrived, the cocaine was loaded into duffle bags and offloaded by Castella, Darrien Garrido, and Quinchia-Carmona and moved into the waterfront house before being transferred by Quinchia-Carmona, Columna Severino, and others to the second stash house. The cocaine was then divided into three parts for distribution. Columna Severino retained 200 kilograms for Cabrera and 200 kilograms for Gil, while the rest was delivered to a third party. Some of the cocaine was shipped to New York and New Jersey for further distribution. [D.E. 63 ¶11-15].

On December 11, 2018, approximately 150 kilograms of cocaine from this shipment was seized by law enforcement officers in luggage loaded aboard a private jet bound for New York from San Juan, Puerto Rico. The seizure included approximately 80 kilograms of cocaine that had been imported by Quinchia-Carmona, aboard the *Alma Mater*. [D.E. 63 ¶16]. Accordingly, the government filed a criminal complaint against all the conspiring defendants that participated in these transactions, including Defendant Quinchia-Carmona. Quinchia-Carmona was not arrested until 2021.

3

Quinchia-Carmona ultimately pleaded guilty to his participation in the conspiracy. [D.E. 44-45]. The Presentence Investigation Report [D.E. 63] found that Defendant's base offense level was 38, based on a quantity of 580 kilograms of cocaine. After a decrease of three levels for acceptance of responsibility, the total offense level was 35. Given that he had zero criminal history points, his criminal history category was I and the applicable sentencing guidelines range was 135-168 months imprisonment. [D.E. 63, ¶¶ 33-36, 64].

At sentencing, the Court determined that the defendant played a minor role in the offense and that he was eligible for the safety valve. [D.E. 82 at 27]. This resulted in a reduction of four in the base offense level, a reduction of two for minor role, and a two-point reduction for the safety valve. [*Id.* at 29]. With a three-level reduction tacked on for timely acceptance of responsibility, Quinchia-Carmona's total offense level was a net 27. Based on his zero criminal history points his criminal history category was I and his sentencing range was 70-87 months imprisonment. The court, lastly, varied downward from that sentencing range and imposed a sentence of 65 months imprisonment. [D.E. 82 at 39; D.E. 68]. The defendant is presently incarcerated at FCI Miami, with a projected release date of July 2025.

As to the downward variance, the government argues that no reason was given by the Court for adjusting the sentence below the 70 months range requested by the government. That is not entirely accurate. The Court clearly took note of the original sentence advocated by the prosecutor of 66 months, based on the then mistaken calculation that his range was, at level 25, a 57 to 71-month sentence. [D.E. 82 at 25].

4

That calculation proved to be incorrect, which when properly adjusted later during the hearing resulted in the level 27 range of 70 to 87 months, but by then the Court had certainly taken note of the prosecutor's suggestion that a 57 to 71-month range would strike the balance between Defendant's minimal role and the need for sufficient punishment even given that role. [D.E. 82 at 25]. When the prosecutor later realized the mathematical error he relied upon, he corrected himself and proposed a low end 70-month sentence without further variances, but acknowledged that "Sixty-six months would also be a reasonable sentence if the Court were to choose to vary downward in this Defendant's behalf." [D.E. 82 at 37].

Given this record, it is not entirely accurate to say that the Court did not have a specific reason for the variance downward to 65 months. Indeed, the Court later explained that "it's clear that you are a good person that made a bad decision. At the age of 50, you've never been involved in the criminal justice system until today. So I have no doubt that the Court's sentence will not only serve as a specific deterrent. I don't believe that you are going to be involved in the criminal justice system again. . . . And as such, I do believe that a sentence that takes into consideration the advisory guidelines -- but a slight variance is warranted." [D.E. 82 at 38-39].

In his current Motion, Quinchia-Carmona argues that he is eligible for a sentence reduction as a zero-point offender. He requests that he be granted the same downward variance as the Court originally applied, now based on the adjusted guideline range. At a minimum, he asks that the Court impose the lowest level

5

possible under the adjusted guideline range, i.e. 57 to 71 months' imprisonment. [D.E. 122].

The government, though conceding that he is eligible under Amendment 821 for reduction in principle, opposes any reduction based on the nature of this case. Specifically, the government labels "the amount of cocaine involved in the offense was enormous – 580 kilograms." Further, the government relies on the high level of criminal intent, planning and determination involved in this distribution scheme. And this Defendant traveled to Puerto Rico to prepare for the offload of the cocaine from the smuggling vessel when it arrived and assisted with the offload of the cocaine and moving the cocaine to a second location. As the government put it, "[h]e was paid a significant amount - $70,000 - for his efforts, certainly an inducement to others unless offset by a serious sentence." [D.E. 121 at 10]. So the government concludes that, given the downward variance the Court already provided to reach the 65-month sentence, no further adjustment is warranted and the motion should be denied.

The government also pointed out that the most the Court could do was to readjust his sentence based on the adjusted guideline range, and it could not further reduce that range with yet another downward variance. "The court does not have the same latitude to vary downward now as it had when sentencing the defendant initially. Although the court varied downward modestly when imposing the defendant's 65-month sentence, it does not have the option of applying a comparable downward variance from the new range of 57-71 months." [D.E. 121 at 8].

## II.   LEGAL STANDARD

Ordinarily, "a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). In the limited instances when a district court does have the authority to modify a term of imprisonment, that authority "is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Therefore, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)).

Here, that statutory authority emanates from 18 U.S.C. § 3582(c)(2), which is a limited and narrow exception to the rule that final sentences are not to be modified. *See United States v. Armstrong,* 347 F.3d 905, 909 (11th Cir. 2003). Specifically, section 3582(c)(2), provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after consulting the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

Under section 3582(c)(2), a district court must undertake a two-step process. *See Dillon v. United States,* 560 U.S. 817 (2010). First, the court must determine if the defendant is eligible for relief under this statute. *Id.* at 826–27. The statute authorizes relief only if a retroactive amendment to the sentencing guidelines lowers

7

the defendant's applicable sentencing guidelines range *and* relief is consistent with applicable policy statements. *Id.* The applicable policy statement here bars a court from granting relief below the bottom of the amended guideline range. U.S.S.G. § 1B1.10(b)(2)(A).

Second, if a defendant is eligible for 18 U.S.C. § 3582(c)(2) relief, the court must determine if it will exercise its discretion to reduce that defendant's sentence after it has considered the traditional 18 U.S.C. § 3553(a) factors, *id.* at 826–27, and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10, cmt. n. 1(B).

Under the § 1B1.10(a)(1) policy statement: "[i]n a case in which a defendant is serving a term of imprisonment, and the guideline range applicable . . . has subsequently been lowered as a result of an amendment . . . the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." And, "if a defendant receives a sentence modification under § 3582(c)(2), subsequent reduction based on the same amendment to the Guidelines is not available—the modified sentence is no longer based on the outdated Guidelines range." *United States v. Caraballo-Martinez,* 866 F.3d 1233, 1240 (11th Cir. 2017). Courts thus cannot "reduce [a] defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A).

8

As a consequence, section 3582(c)(2) and the governing Guidelines provision, U.S.S.G. § 1B1.10, do not allow a court to impose the same variance granted at a defendant's original sentencing in a sentence reduction proceeding. "Except as provided in subdivision (B), the court *shall not* reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection." U.S.S.G. § 1B1.10(b)(2)(A) (emphasis added).

Based on this standard, we proceed to evaluate Aguilar's argument for a sentence reduction under section 3582(c)(2).

### III.   ANALYSIS

#### A.   *Eligibility under Section 3582(c)(2)*

The government concedes that the first threshold for a sentence reduction has been satisfied in Quinchia-Carmona's case. Under the zero-point offenders amendment, it now "provide[s for] a decrease of two levels from the offense level . . . for defendants who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravating factors." Application to Amendment 821 (Parts A and B, Subpart 1 Only), Amendment to the Sentencing Guidelines, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf. Specifically, a defendant must meet all the following criteria to be eligible for relief:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

9

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense);

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1.

Based on these provisions, the Court agrees with the government that Quinchia-Carmona is eligible for relief under the "zero-point offender" amendment. First, he was not sentenced at an applicable mandatory minimum term of imprisonment. He was instead sentenced to 65 months of imprisonment based on an available range of 70 to 87 months. Second, Quinchia-Carmona was scored with zero

criminal history points in his PSI. Third, he meets all the criteria enumerated in paragraphs 2 through 10 above. Finally, after applying minor-role, safety valve and acceptance reductions to Quinchia-Carmona's original base offense level of 35, his ultimate sentence was not at the bottom of or below the new adjusted guideline range for level 25. *See* U.S.S.G. ch. 5, pt. A. His net sentence of 65 months falls mid-way at the current level 25 guideline range of 57 to 71 months.

Accordingly, under Amendment 821 Quinchia-Carmona is eligible for a sentence reduction as a zero-point offender. But, again, the Court cannot "reduce [Quinchia-Carmona's] term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A).

**B.     *A Sentence Reduction is Warranted by 18 U.S.C. § 3553(a) Factors***

Section 1B1.10(a) directs courts to also consider the factors set forth in 18 U.S.C. § 3553(a) when determining if a zero-point defendant should be granted any sentence reduction. Section 3553(a) lists, among other things, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed." 18 U.S.C. § 3553(a)(1)-(2). Moreover, section 3553(a)(2) emphasizes the need to consider "adequate deterrence to criminal conduct," a "reflect[ion] of the seriousness of the offense," "protect[ion] [for] the public from further crimes of the defendant," and "provid[ing] just punishment for the offense."

11

As the government correctly points out, Quinchia-Carmona was convicted of a very serious drug offense that involved 580 kilograms of cocaine. The government insists that, despite the two-level adjustment available for a zero-point offender, the downward sentence that the Court imposed should remain in place. The government principally relies on the argument that the 65-month sentence was a fair result of the adjustments and variance that the Court found applicable. "The sentence imposed by the court [was] appropriate considering the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence." [D.E. 121 at 10].

The government concludes that, even if an additional two-level adjustment is available under Amendment 821, the Court should leave matters where they are because the net sentence correctly falls within the adjusted guideline range. And, at a minimum, the Court cannot impose a bottom-of-the-range sentence now (i.e. 57 months) and then super-impose the downward variance originally granted on that term.

As to that latter point, the government is entirely correct. Eleventh Circuit and other circuit caselaw makes crystal clear that "the 'applicable guideline range' is the range before any departure provision or variance [under Application Note 1 to § 1B1.10[. Accordingly, we have stated that, as a result of the amendment, a § 4A1.3 departure is not included in the 'applicable guideline range' for the purposes of § 3582(c)(2). *United States v. Hargrove,* 732 F.3d 1253, 1254 n.1 (11th Cir.2013)." *United States v. Jenney*, 631 F. App'x 865, 867 (11th Cir. 2015).

12

This is entirely consistent with the caselaw cited in the government's response in opposition. *See, e.g., United States v. Leatch*, 858 F.3d 974, 978 (5th Cir. 2017) ("the unanimous view of the circuits that have decided the question since . . . 2011" is that "the applicable guideline range is the guideline range that corresponds to the offense level and criminal history category determined pursuant to section 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance" (internal quotation marks omitted); *see also United States v. Hogan*, 722 F.3d 55, 59–61 (1st Cir. 2013); *United States v. Montanez*, 717 F.3d 287, 292–94 (2d Cir. 2013); *United States v. Flemming*, 723 F.3d 407, 411–13 (3rd Cir. 2013); *United States v. Boyd*, 721 F.3d 1259, 1262–64 (10th Cir. 2013).

This means that the Court cannot readjust the guideline sentence, impose a bottom-end sentence of 57 months, and then find once again that a downward departure or variance is warranted under the circumstances by reducing that sentence by another five months (as it did at the original sentencing). There can be no disputing this conclusion.

But that does not mean that the Court must reimpose the same 65-month sentence even in light of the zero-point adjustment. The Court could do so, of course, by why would we treat this Defendant worse off than a defendant who had never received a downward variance in the first place? After all, had the Court agreed with the prosecutor at sentencing that the low-end range was appropriate (70 months), and then was presented with the current motion for a zero-point adjusted sentence, would the Court have simply re-imposed that sentence? Highly doubtful. It would

13

likely have simply adjusted the low-end sentence in light of the level 25 range and imposed a 57-month sentence. The reasons for imposing the variance would be fully applicable in that circumstance to warrant that revised guideline sentence, which would have also been entirely consistent with the prosecutor's statement of the type of sentence that was appropriate.

Now that this Defendant received the Court's extraordinary consideration, however, why would it leave the Defendant in the same place as he was before? Again, the Court clearly cannot impose a five-year variance on the adjusted guideline range, but that does not preclude readjusting the sentence based on the minimum adjusted guideline range. The record fully supports that conclusion. And the government does not dispute that we could do so (so long as a downward variance does not also follow). But the argument against it is that this was a serious case, a great deal of cocaine was involved, an extensive planned-out conspiracy was in play, etc. All those factors were known and taken into account by the Court at the time of sentencing, which resulted in a downward variance on a 70-month plus range. Applied here again, under the adjusted guideline level, the natural result is simply to impose a bottom-end sentence on a level 25 adjusted range.

The government's opposition to such a measure is not persuasive. Distribution of 580 kilograms of the cocaine is certainly serious and warrants a meaningful sentence. But in comparison with other similar cases and similar defendants, it is hard to square with the government's insistence that only a 65-month sentence is sufficient under section 3553. That is especially the case here where this Defendant

was only indirectly involved in the distribution of about 80 kilograms of seized cocaine that gave rise to this case.

Here, the Court concluded at sentencing that Quinchia-Carmona's offense warranted a low-end sentence in the then-applicable range, plus an additional five-year variance. Now that the range has been adjusted to a level 25, to a range of 57 to 71 months, his sentence should be adjusted in a commensurate fashion by reducing his sentence to the low-end of the new range, i.e. 57 months. This reduction in Quinchia-Carmona's sentence would still be fully in keeping with the goals and requirements of section 3553(a) while at the same time placing Quinchia-Carmona in substantially the same position as others who committed similar offenses.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Modify Term of Imprisonment based on a zero-point offender [D.E. 311] be **GRANTED**. The Court recommends a reduced sentence of 57 months' imprisonment but no departures or variances may be imposed.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.,*

*Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 23rd day of April, 2024.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge